## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 24 2016, 10:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John L. Tompkins
Brown Tompkins Lory & Mastrian
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Terry Austin,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

August 24, 2016

Court of Appeals Case No.
30A01-1511-PC-1998

Appeal from the Hancock Superior Court

The Honorable Terry K. Snow, Judge

Trial Court Cause No.
30D01-1507-PC-1134

**Najam, Judge.**

# Statement of the Case

Terry Austin appeals the post-conviction court's denial of his petition for post-conviction relief. Austin raises a single issue for our review, namely, whether the post-conviction court erred when it concluded that Austin had not received ineffective assistance of trial counsel. We affirm.

# Facts and Procedural History

We discussed the facts underlying Austin's conviction in our memorandum decision following his direct appeal:

> Austin was employed as a lieutenant and shift supervisor for the Greenfield Police Department in 2013 and 2014. In September 2013, Austin's brief marriage to Koleki Wright was dissolved finalizing the contentious legal battle between the two. Wright's driver's license had been suspended since January of 2013.
>
> In December 2013, Austin used Facebook to contact McCordsville Police Officer Shawn Brady, whose patrol area included Wright's residence, about Wright. Austin sent him information about Wright's license status, which he had obtained through the IDACS database, her address, and her driver's license number. He did so even though officers are not permitted to send IDACS information through messaging systems such as Facebook. In that message, Austin also informed Brady that Wright's driver's license was suspended and offered Brady a $200 gift card for a steak dinner if Brady would initiate a traffic stop and impound Wright's vehicle for driving with a suspended license. Brady did not act on Austin's offer.
>
> On February 18, 2014, at approximately 5:30 a.m., Wright, whose contact information was saved on Austin's cell phone

under the moniker "Bitch," sent a text message to Austin informing him that she was traveling for work and could not attend a hearing that the two were to attend that was scheduled for later that day. At approximately 6:00 a.m. that same day Austin sent a text message to his friend, Fortville Police Officer Matt Fox, asking Fox for the cell phone number of McCordsville Police Officer Nathan Garner, whose normal patrol route included Wright's residence. Austin again offered a gift card for a $200 steak dinner to the first one to "nail her" in his message to Fox. Tr. p. 156. After Fox replied that he loved steak, Austin texted, "Nail her ass and it's yours!!!!!" Appellant's App. p. 22. Austin then asked Fox if Garner would "hook [him] up" to which Fox replied "Should." *Id.* Austin sent Wright's IDACS information to Fox from his computer.

Minutes after receiving Garner's cell phone number, Austin sent Wright's IDACS information to Garner, including her suspended license status, in a text message. Austin identified himself by name and as "GPD" in a subsequent text message and asked Garner to call him. *Id.* Garner, who was on active patrol, called Austin, who offered Garner a gift card for a $200 steak dinner if Garner would initiate a traffic stop on Wright for driving with a suspended license. Austin told Garner the make and model of Wright's vehicle and at what time he expected Wright to leave for work. After the phone call was completed, Austin sent the offer to Garner by text message. Garner did not act on the information supplied by Austin, and at some point later filed a report about the incident.

On February 26, 2014, Austin entered the Hancock County Emergency Operations Center to obtain a print-out of the Computer Aided Dispatch of all officer activity from the previous night. While there, Austin spoke with IDACS coordinator Keri Brady, Officer Shawn Brady's ex-wife. In a loud voice, Austin told Brady that he had offered a gift card for a $200 steak dinner to Brady's ex-husband if he would arrest Wright and "tow her

shit." Tr. p. 91. Austin said that he had made the same offer to other officers. Austin spoke loudly enough that other people in the dispatch center overheard Austin's comments.

After that conversation ended, Brady reported Austin's conduct as a possible IDACS violation. Brady spoke to someone with the Indiana State Police and determined that Wright's information had been run through IDACS seventeen times between July 20, 2013[,] and February of 2014. Brady also contacted Greenfield Police Detective Randy Ratliff, who was in charge of all internal investigations for that department. Ratliff then informed his chain of command about Austin's actions and contacted the Indiana State Police.

In March 2014, Indiana State Police Detective Amy Johnson was assigned to investigate Austin's actions. Detective Johnson obtained records from Ratliff and the report that Garner had filed after the incident. She interviewed Austin on March 24, 2014, and[,] after he was advised of his rights and signed a waiver, he admitted that he offered a $200 gift card to the first officer to arrest Wright. Austin maintained that he had not done anything wrong by making the offer. The State charged Austin with bribery and official misconduct and the jury found him guilty of both felony offenses.

*Austin v. State*, No. 30A04-1412-CR-589, 2015 WL 3965688 at *1-*2 (Ind. Ct. App. June 26, 2015). We affirmed Austin's convictions on appeal.

[3] Thereafter, Austin filed his petition for post-conviction relief. In his petition, Austin alleged that he had received ineffective assistance of trial counsel. In particular, Austin argued that his trial counsel's failure to file a motion to suppress the text messages obtained from his cell phone pursuant to a search

warrant was ineffective assistance. After an evidentiary hearing, the post-conviction court denied Austin's petition, finding in part that Austin's counsel had a reasonable strategy for not filing a motion to suppress that evidence. This appeal ensued.

## Discussion and Decision

[4] Austin appeals the post-conviction court's denial of his petition for post-conviction relief. Our standard of review in such appeals is clear:

> [The petitioner] bore the burden of establishing the grounds for post[-]conviction relief by a preponderance of the evidence. *See* Ind. Post-Conviction Rule 1(5); *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001). Post-conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. *Timberlake*, 753 N.E.2d at 597. Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. *Id.* If an issue was known and available, but not raised on direct appeal, it is waived. *Id.* If it was raised on appeal, but decided adversely, it is res judicata. *Id.*

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. *Id.* at 468-69. Because he is now appealing from a negative judgment, to the extent his appeal turns on factual issues [the petitioner] must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *See Timberlake*, 753 N.E.2d at 597. We will disturb the decision only if the evidence is without conflict and leads only to a conclusion contrary to the result of the post-conviction court. *Id.*

*Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*.

[5]     On appeal, Austin argues that his trial counsel rendered ineffective assistance when he did not file a motion to suppress the text messages the State had obtained from his cell phone pursuant to a search warrant. Generally, a claim of ineffective assistance of counsel must satisfy two components. *Strickland v. Washington*, 466 U.S. 668 (1984). First, the criminal defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687-88. Second, the criminal defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. Notably, "[r]easonable strategy" of trial counsel "is not subject to judicial second guesses." *Pryor v. State*, 973 N.E.2d 629, 632 (Ind. Ct. App. 2012).

[6]     Austin's trial counsel made a reasonably strategic decision not to file a motion to suppress the text messages obtained from Austin's cell phone. At the evidentiary hearing on Austin's petition for post-conviction relief, Robert Elsea, Austin's trial counsel, testified that he consciously did not seek to suppress the text messages because

> the vast majority of the evidence in regards to . . . what Terry had alleged[ly] . . . said to other officers . . . was discovered prior to getting the actual text messages off of his phone. [S]o as far as the search warrant, as it pertained to this case, I didn't think quite honestly that it was particularly critical to keep the actual texts of

what he set out in light of the amount of direct evidence that was go[ing] to come from several different people that those communications were made.

P-C Tr. at 29. Indeed, much of the State's evidence against Austin were Austin's own statements to investigating officers after Austin waived his *Miranda* rights. The post-conviction court expressly credited Elsea's testimony when it found that Elsea had a reasonable trial strategy for not filing a motion to suppress.

[7] Accordingly, the court's finding that Elsea had a reasonable trial strategy not to file the motion to suppress is supported by the evidence. We will not second guess a trial counsel's reasonable trial strategy. *Pryor*, 973 N.E.2d at 632. Austin cannot demonstrate that his trial counsel's performance fell below an objective standard of reasonableness. And, given Austin's statements heard by witnesses at the dispatch center, as well as his own admission, Austin cannot show prejudice. Under either and both prongs of *Strickland*, Austin cannot demonstrate ineffective assistance of counsel. The judgment of the post-conviction court is affirmed.

[8] Affirmed.

Vaidik, C.J., and Baker, J., concur.